GEORGE L. HART *versus* INHABITANTS OF HOLDEN.

On Jan. 6, 1865, the plaintiff, relying upon the promise of the defendants, made to him that day, through their selectmen, that, if he would enlist upon their quota under the then existing call, he should receive the same town bounty as others, subsequently enlisting upon the same quota, and under the same call, might be entitled to under a vote of the town, at a meeting thereof already called and to be holden eight days thereafterwards, enlisted and was duly mustered, credited upon the town's quota, assigned to the coast guard, and served there until July following, when he was honorably discharged. At the meeting, the town voted "to raise $300 for each man who volunteers for one year to fill the town's quota under the present call." On the 15th of the following Feb., one of the selectmen delivered to the plaintiff a town order for $300. At a townmeeting duly called, and held on the 13th of the following March, in pursuance of an article in the warrant, the town voted "to pay men who have gone into the coast guard $100 bounty. In an action upon the town order: — *Held*,

1. That the former vote of the town included the plaintiff;

2. That the town order was made valid by Pub. Laws of 1865, c. 298, § 1;

3. That after the town order had been given, and confirmed by the Legislature, the town could not revoke it either in whole or in part; and,

4. That the contract was ratified by Pub. Laws of 1865 and 1866, chapters 298 and 59 respectively.

ON REPORT.

The case is stated in the opinion.

*A. W. Paine*, for the plaintiff.

The vote of the town ratified the promise made by the selectmen. *Lowell* v. *Oliver*, 8 Allen, 247; *Freeland* v. *Hastings*, 10 Allen, 570; *Pottle* v. *Maidstone*, 39 Vt., 70; *Blodgett* v. *Holbrook*, 39 Vt., 336.

The vote was justified by the warrant. R. S., c. 3, § 5; *Cornish* v. *Pease*, 19 Maine, 184; *Ford* v. *Clough*, 8 Greenl., 334; *Davis* v. *Hilliard*, 1 Fairf., 317; *Spear* v. *Robinson*, 29 Maine, 531; *Avery* v. *Stewart*, 1 Cush., 496; *Blackburne* v. *Walpole*, 9 Pick., 101; *Haven* v. *Lowell*, 5 Met., 35; *Hudwell* v. *Hancock*, 3 Gray, 526; *Grover* v. *Pembroke*, 11 Allen, 89; *Black* v. *Colchester*, 39 Vt., 193; *Pottle* v. *Maidstone*, 39 Vt., 70. The vote embraced the plaintiff. *Pottle* v. *Maidstone, ubi sup.* The town counted him by filling the remainder of the quota. *Tarbell* v. *Ply-*

*mouth*, 39 Vt., 429. The "purpose, occasion and circumstances of the proceedings," indicate such to have been the intention. Upon the construction of the vote, counsel also cited *Green* v. *Kemp*, 13 Mass., 518; *Com.* v. *Weiher*, 3 Met., 448; *Pierce* v. *Atwood*, 13 Mass., 324; *Shackfield* v. *Newington*, 46 N. H., 420; *Holbrook* v. *Holbrook*, 1 Pick., 250; *Staniels* v. *Raymond*, 4 Cush., 316; *Winslow* v. *Kimball*, 25 Maine, 493; *Cushing* v. *Worrich*, 9 Gray, 382; *Atwood* v. *Cobb*, 16 Pick., 227; *Barney* v. *Newcomb*, 9 Cush., 56. The language of the vote "who volunteers" is in the present tense, not in the future more than past form. Common use of language allows the present tense to express both past and future action. So used by best authors. See also Bible, Revised Statutes. "Has been, is now and ever shall be" is not found outside of the Episcopal altar.

*J. A. Peters*, for the defendants.

1. The vote is prospective.

2. Service of warrant not sufficient.

3. The latter vote was without consideration. It was to raise money. No contract implied.

Counsel cited, *Fowler* v. *Danvers*, 8 Allen, 80; *Lowell* v. *Oliver*, 8 Allen, 247; *Alley* v. *Edgecomb*, 53 Maine, 446.

BARROWS, J. — The plaintiff seeks to recover in this action the sum of three hundred dollars, to which he says he is entitled by virtue of a vote of the town, passed January 14, 1865, and of his enlistment to fill the town's quota under the call for troops, made by the President of the United States, December 19, 1864, for which sum he received from the selectmen a town order dated Feb. 15, 1865, which is offered in evidence in support of a count for money had and received, and a special count upon the order itself.

The vote relied upon is as follows: — "Voted to raise three hundred dollars for each man who volunteers for one year, to fill the town's quota under the present call for men."

Testimony was offered by the plaintiff to prove that, after the town had been notified to fill their quota under this call, the selectmen, who were acting for the town in that matter, on the 6th of January, 1865, being the day on which they issued the warrant for the meeting of Jan. 14, urged the plaintiff to enlist upon the quota, assuring him, and, in behalf of the town, promising him, that, if he would do so, he should receive the same bounty from the town which those subsequently enlisting might be entitled to, under the vote of the town at the approaching meeting; that, relying upon this promise of the selectmen, he enlisted on the same day, January 6, and was duly accepted and credited on the town's quota, which was filled by subsequent enlistments, the plaintiff being counted as one; that he was assigned to the coast guard service, and actually served as a soldier in the army until honorably discharged in July, 1865.

On the 15th Feb., 1865, the town clerk who recorded the vote above recited, being also one of the selectmen at whose solicitation the plaintiff had enlisted, made to the plaintiff the town order for $300.

At a subsequent meeting of the town, held March 13, 1865, in pursuance of an article inserted in the warrant "to see if the town will so amend the vote passed at their meeting January 14, for paying bounties to volunteers, as to exclude those men who have enlisted in the coast guards from this town from receiving the bounty then voted, or pass any vote relating to paying bounties to volunteers for the coast guards," it was " voted to pay men who have gone into the coast guard from this town the sum of one hundred dollars bounty if they remain in this State; if they are called out to the front, a bounty of three hundred dollars."

On the part of the defendants, it is objected that there was no legal notice of the townmeeting. But there is nothing before us in this report upon which this objection can properly be sustained. The returns upon the warrants are not made part of the case. Copies of only so much of the warrants and of such votes as relate to the claim in suit

are called for. These portions of the record seem to have been put in at *nisi prius* without objection, or notice to plaintiff that any question was made as to the legality of the meeting. Under such circumstances, the defendants are not at liberty upon this hearing to dispute the legality of the meeting. The report professedly embraces only portions of the record, and these portions having been received without objection, the presumption is that the transactions therein recited occurred at a legal meeting of the town.

It is further objected that the plaintiff, having enlisted previous to the meeting, is not comprehended within the terms of the vote, and the case of *Alley* v. *Edgecomb*, 53 Maine, 446, is cited. There are radical distinctions between that case and the present which must not be overlooked. There, the claimant of the bounty had enlisted months previous to the issuing of the call — in the navy, where he might gain prize money, and while his name, in conformity with the regulations of the service, was credited to the town, thus reducing the number of men they were called upon to furnish on that quota, the vote of the town passed long afterwards to raise money "sufficient to fill the town's quota provided they can be procured for $300 per man," manifestly contemplated a prospective procurement only, and could not, by any reasonable construction, be made to include the plaintiff in that suit. But where, as here, the vote is "to raise three hundred dollars for each man who volunteers to fill the town's quota, under the present call for men," there is nothing in the terms of the vote to exclude, from a participation in its benefits, one who did thus volunteer upon that quota under that call, although he enlisted a few days previous to the actual passage of the vote.

Throughout the rebellion, as soon as the calls for more troops were issued, efforts were made to procure recruits, anticipating the action of the towns and a future legislative ratification and confirmation of their acts and doings; and very many promptly and cheerfully responded to the call, renouncing profitable employments in civil life, relying upon

the patriotic liberality of their townsmen, whose votes were commonly so framed as to place on equal footing all who volunteered on the same quota, under the same call, without regard to the precise date of their enlistment, or whether it was before or after the day of the meeting.

Such, we think, is the true intent and construction of this vote. Like construction and effect were given to a vote not materially different in *Gale* v. *Jamaica*, 39 Vt., 611.

Grammatical precision and verbal accuracy are not to be expected in the records of the proceedings of townmeetings; and the want of them vitiates nothing, provided the true intent can be fairly ascertained, looking at the record in the light afforded by a knowledge of " the purpose, occasion and circumstances of the proceedings." See remarks of BARRETT, J., in *Pottle* v. *Maidstone*, 39 Vt., 72.

But it is further urged in defence that the vote constituted no contract, — implied none, — that there was no consideration, an essential element in a valid contract. It can hardly be necessary to remark that these cases differ in various respects from ordinary cases of contract.

Towns were under no obligation to provide for the public defence, had no power to take measures for that purpose, or to bind themselves by any promises or undertakings relating thereto. So that in the outset there was but one party capable of making a contract relative to that subject matter, and, from the very nature of the case, there was no possibility of a consideration moving from the volunteer or drafted man to the corporation whose promises he seeks to enforce. For, as corporations, they had neither rights nor duties in the premises. The mass of our citizens, being individually sensible of the duty which they owed to the country, made use of their municipal organizations to assure to those who took the field, either as volunteers or drafted men, or as substitutes for drafted or enrolled men, something beyond and above the low rate of pay which was felt to be altogether inadequate considering the hardships and hazards of the service. In most cases, the assurance when made was with-

Hart *v.* Holden.

out legal force or effect, for want of. existing authority in the towns to bind themselves for any such purpose, but, when these unauthorized acts and doings of the towns were ratified and confirmed by the Legislature of the State, they became valid and binding to all intents and purposes, and thenceforward it is unnecessary for the drafted man, (who has simply acted in obedience to law,) or for the volunteer, who has enlisted previous to the vote granting the bounty, to show anything more than that he is within the scope and intent of the vote under which he claims. He need not prove such a consideration as would be required to sustain an ordinary contract. The desire of the community to share the burdens which the law imposed upon that class of our citizens who were capable of bearing arms, stands instead of a stipulated consideration. The drafted man, who contracted with nobody, the substitute, who contracted with his principal, and the volunteer, whether he enlisted upon the quota before or after the passage of the vote, are all placed upon the same footing by the ratifying Acts. Laws of 1865, c. 298, § 1; Laws of 1866, c. 59, § 1.

But aside from the obvious view that the rights of the parties must depend in these cases upon the construction of the votes and the ratifying Acts, and not upon proof of a previous agreement for *quid pro quo*, the plaintiff in the case at bar offers testimony of previous assurances received from the selectmen, then acting in behalf of the town, that if he would enlist he should receive the same bounty which might be voted to others enlisting on the same quota; and this would seem to bring his case within the purview of §§ 2 and 3 of the chapters above referred to, and to present more of the features and incidents of ordinary contracts than are commonly found in cases of this description.

The vote of the town of Holden was passed January 14th. The plaintiff was one of those who volunteered " for one year to fill the town's quota under the present call for men." He was within the terms of the vote. On the 15th of Feb-

ruary, in pursuance of the vote, he received a town order for the three hundred dollars voted to each man who thus volunteered. On the 17th of February, by legislative enactment, "the past Acts and doings of cities, towns and plantations, in offering, paying, agreeing to pay, and in raising and providing the means to pay bounties to, and notes and town orders given by the municipal officers of any city, town or plantation in pursuance of a previous vote for the benefit of volunteers, drafted men, or substitutes for drafted or enrolled men," &c., were made valid. Upon this showing, the rights of the plaintiff to maintain his action for the three hundred dollars is established, unless something further appears to defeat it.

The action of the town at the meeting of March 13, when an attempt was made to limit the sum to be paid to those of their volunteers who had been assigned to the coast guard, to one hundred dollars, cannot have that effect. After the promise of the town had been given and their act in making it had been confirmed by legislative enactment, it was not competent for them to revoke the promised bounty, either in whole or in part. The good or bad fortune of the plaintiff, (whichever it may be called,) in being assigned to a post of comparatively less danger and less honor in the service, cannot affect his rights here. It was a matter over which he had no control.

According to the stipulations of the parties in this report,

*The case must stand for trial.*

Appleton, C. J., Kent, Dickerson and Danforth, JJ., concurred.